UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HANYEH KHOSHNEVISAN**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF STATE**, *et al.*,<br><br>Defendants. | Case No. 1:23-cv-03580 (TNM) |

**MEMORANDUM OPINION**

The political branches of the Government have near-total control over which aliens may enter this country. When the Executive exercises that power, it seldom needs to give much reason why. This is not the rare case in which it does. So Plaintiffs' lawsuit—which demands a detailed explanation for one Plaintiff's visa refusal—must fail. The Court will therefore grant the Government's dismissal motion.

**I.**

Hanyeh Khoshnevisan is a naturalized American citizen who was born in Iran. Compl. ¶¶ 8–9, ECF No. 1. Her father remains an Iranian resident and national. *Id.* ¶ 9. He previously held visitor and student visas for the United States and lived here while those visas were valid. *Id.* ¶ 15. But he returned to Iran once they expired, *id.* ¶ 18, and now seeks readmission on an immigrant visa through an I-130 Alien Relative Petition, *id.* ¶ 19. Although he completed his visa application and sat for an interview, Mr. Khoshnevisan's application was refused by the U.S. Embassy in Abu Dhabi, UAE, because he was "ineligible to receive a visa under Section 212(a)(3)(B) of the INA." *Id.* ¶¶ 19–26. That section, codified at 8 U.S.C. § 1182(a)(3)(B), is known as the "terrorist activities bar." It renders inadmissible aliens who have engaged or are

reasonably likely to engage in terrorist activity. 8 U.S.C. § 1182(a)(3)(B). Although Mr. Khoshnevisan requested further explanation, the Embassy refused to elaborate. Compl. ¶ 27.

So Mr. Khoshnevisan and his daughter brought this suit.[1] They ask that the Court order the Government "to provide sufficient explanation of the evidence that supports its finding that Mr. Khoshnevisan is involved in terrorist activities." Compl. at 8; Opp'n at 1, ECF No. 18.

## II.

"Decisions regarding the admission and exclusion of foreign nationals are a fundamental sovereign attribute exercised by the Government's political departments." *Khachatryan v. Blinken*, 4 F.4th 841, 849 (9th Cir. 2021) (cleaned up). Thus, because "such judgments are frequently of a character more appropriate to either the Legislature or the Executive," *Trump v. Hawaii*, 585 U.S. 667, 702 (2018), courts "have long recognized and applied the doctrine of consular nonreviewability." *Khachatryan*, 4 F.4th at 849 (cleaned up).

Under that doctrine, "a consular official's decision to deny a visa to a foreigner is not subject to judicial review." *Id*. So refusal of a visa application "is conclusive . . . and cannot be disturbed by judicial decree." *Sedaghatdoust v. Blinken*, No. 1:23-cv-03218 (TNM), 2024 WL 2383228, at *4 (D.D.C. May 23, 2024). That rule applies with the most force in cases seeking review of "the substance of a consular officer's visa determination." *Id*. at *3. But it also applies when a lawsuit seeks an explanation of *why* the consular officer made his decision. *See Khachatryan*, 4 F.4th at 848–49.

---

[1] The Khoshnevisans sued both the State Department and the Secretary of State. Compl. at 1. They lack standing to sue the Secretary. *Sedaghatdoust v. Blinken*, No. 1:23-cv-03218 (TNM), 2024 WL 2383228, at *2 (D.D.C. May 23, 2024). But they *do* have standing to seek mandamus against the State Department, *In re Ctr. for Bio. Div.*, 53 F.4th 665, 670 (D.C. Cir. 2022) (permitting mandamus directly against agency), which oversees the visa process and could potentially remedy their injuries, 8 U.S.C. § 1201(a); 22 C.F.R. § 40.1(d). There is thus at least one valid Defendant, so this suit can proceed. *Sedaghatdoust*, 2024 WL 2383228, at *2.

There is a narrow exception. "[A]n American citizen can challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). But even under that exception, the Court may only "engage[] in a *circumscribed* judicial inquiry" over the denial. *Trump*, 585 U.S. at 703 (emphasis added). That inquiry is minimal. For the most part, it is restricted to asking whether the Government has identified a "facially legitimate and bona fide" reason for denying the visa. *Kerry v. Din*, 576 U.S. 86, 104–05 (2015) (Kennedy, J., concurring in the judgment).[2] And to qualify as a "facially legitimate and bona fide" basis for denial, the statute invoked must generally identify "discrete factual predicates" justifying the denial. *Khachatryan*, 4 F.4th at 851.

So in a case like this one, the analysis is straightforward. First, the Court asks whether there is an American citizen who has a protected liberty interest in the visa application. *See Din*, 576 U.S. at 104 (Kennedy, J., concurring in the judgment). Second, it asks whether the visa denial has afforded that citizen all the process that is due. That means asking (1) whether the Government "denied the visa under a valid statute of inadmissibility," and (2) whether that "admissibility statute . . . specifies discrete factual predicates the consular officer must find to exist before denying [the] visa" or "there is a fact in the record that provides at least a facial connection to the statutory ground of inadmissibility." *Khachatryan*, 4 F.4th at 851. If the Government has carried its burden there, a plaintiff can only prevail if he proves that the Government's "stated reason was not bona fide by making an affirmative showing of bad faith on the part of the consular officer who denied the visa." *Id*. (cleaned up).

---

[2] Courts have generally agreed that, under *Marks v. United States*, 430 U.S. 188 (1977), Justice Kennedy's concurrence is *Din*'s controlling opinion. *See Khachatryan*, 4 F.4th at 850; *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1024 (D.C. Cir. 2023).

3

### III.

The Khoshnevisans argue that the Due Process Clause requires the Government to explain why Mr. Khoshnevisan's application was denied. For that to be true—for the Constitution to make *any* process be due—the visa denial must implicate a right to life, liberty, or property. *See Fray v. Buttigieg*, 1:23-cv-03708 (TNM), 2024 WL 1758634, at *4 (D.D.C. Apr. 24, 2024). In this context, that means identifying a "fundamental liberty interest" that is implicated by the visa denial. *Khachatryan*, 4 F.4th at 855–56. None exists.

First, Mr. Khoshnevisan has no Due Process Clause rights to speak of here. "[F]oreign nationals seeking admission [to this country] have no constitutional right to entry." *Trump*, 585 U.S. at 703. Indeed, nonresident aliens outside the country generally have no Due Process Clause rights at all. *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States . . . has no constitutional rights regarding his application."); *see also Mendoza-Linares v. Garland*, 51 F.4th 1146, 1167 (9th Cir. 2022) ("[S]uch an alien has only those rights regarding admission that Congress has provided by statute." (cleaned up)). So to the extent that the visa denial here implicates a fundamental liberty interest, it must be *Ms*. Khoshnevisan's liberty interest.

But she has none either. Plaintiffs speak broadly of an interest in Mr. Khoshnevisan "resid[ing] with his family" or "family reunification." Opp'n at 5. That is, they assert a fundamental liberty interest in cohabitation between a parent and his adult child. But "no precedent from this court or from the Supreme Court . . . has recognized any such right." *Khachatryan*, 4 F.4th at 856.

Nor is there any basis for the Court here to recognize one. "[T]he established method of substantive-due process analysis requires that an unenumerated right be deeply rooted in this

4

Nation's history and tradition before it can be recognized as a component of the liberty protected by the Due Process Clause." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 260 (2022) (cleaned up).  That "[h]istorical inquir[y]" is "essential."  *Id*. at 239.  It helps guard against courts adopting "an unprincipled approach," and thereby "fall[ing] into . . . freewheeling judicial policymaking."  *Id*. at 240.  For the same reason, the putative right "must be defined in a most circumscribed manner, with central reference to specific historical practices."  *Khachatryan*, 4 F.4th at 856.  The sole exception to that rule—"for fundamental rights involving marriage and intimacy," *id*. (cleaned up)—is inapplicable here because this case pertains to an adult child and her parent rather than the more constitutionally-privileged relationship between spouses.

Thus, "the question before [the Court] is whether the liberty specially protected by the Due Process Clause includes a right of familial association that itself includes a right of an adult child to bring his or her alien parent *into* the United States."  *Khachatryan*, 4 F.4th at 856 (cleaned up).  As the Ninth Circuit recognized, no such right existed at the time the Constitution was ratified.  *Id*. at 858–860.  Nor has such a right been recognized since.  *Id*. at 856.  The lack of recognition for this right in American legal history dooms the Khoshnevisans' substantive due process claim.  However commendable the desire for adults of one family to engage in intergenerational cohabitation may be, they have no *right* to do so, at least when it requires a noncitizen family member to be brought across the border.

Thus, neither Plaintiff has a constitutional right that the visa refusal implicates.  Mr. Khoshnevisan has no constitutional rights at all.  And whatever rights Ms. Khoshnevisan has, they do not include a right to bring her father across the border to live with her.  Because the visa refusal implicates no constitutional right, the exception to consular nonreviewability does not apply.  And so the Khoshnevisans' claims are not judicially cognizable.

## IV.

But "even assuming [Ms. Khoshnevisan] has such an interest, the Government satisfied due process when it notified [her father] that his visa was denied under the immigration statute's terrorism bar, § 1182(a)(3)(B)." *Din*, 576 U.S. at 102 (Kennedy, J., concurring in the judgment). In fact, this case is a near replica of *Din* in relevant respects. Both cases involve a visa applicant's relative suing over allegedly insufficient explanations after the State Department denied a visa while citing the terrorism bar. *Compare* Compl. ¶¶ 26, 31–33, *with Din*, 576 U.S. at 89–90 (plurality opinion). But in *Din*, the Court held that citing *this exact statutory provision* was enough to comply with due process. *Din*, 576 U.S. at 102 (Kennedy, J., concurring in the judgment). This Court has no authority to depart from that conclusion.

The question thus becomes whether the Khoshnevisans have made "an affirmative showing of bad faith on the part of the consular officer who denied the visa." *Khachatryan*, 4 F.4th at 851 (cleaned up). They have not. To be clear, their burden here is not high. They need only "plead[] factual content," "accepted as true, . . . that allows the court to draw the reasonable inference that" the Government acted in bad faith. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Yet they have not done so.

First, Plaintiffs have alleged that that "Defendants have acted in bad faith." Compl. ¶ 7; *see also id.* ¶ 32. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to carry their burden. *Iqbal*, 556 U.S. at 678.

Next, they argue that the failure to fully explain the refusal is itself evidence of bad faith. Compl. ¶¶ 6, 32. But that is circular. The whole point of *Din* is that a detailed explanation is unnecessary *unless* the plaintiff proves bad faith. If the Khoshnevisans were right and a detailed explanation were needed to avoid a finding of bad faith, *Din* would be little more than an inkblot.

The Government could either give a detailed explanation for its visa refusal, or it could decline, be found to have acted in bad faith, and be compelled to provide that same detailed explanation. Heads, plaintiff wins; tails, defendant loses. That is the opposite of what *Din* requires.

Last, Plaintiffs note that Mr. Khoshnevisan was issued two U.S. visas in 1991 and 1992, as well as 28 foreign visas since. Compl. ¶¶ 15–16. These prior visa approvals, they submit, are evidence that Mr. Khoshnevisan is not, in fact, a threat to national security. Opp'n at 5–6. But this is simply a disguised attack on the substance of the refusal decision. The Khoshnevisans openly rely on these prior visa approvals to argue that the Government was wrong to find that Mr. Khoshnevisan was likely to commit acts of terrorism. That is *not* an argument that the Government acted with bad faith, but simply an argument that it was *wrong*. Although in certain other contexts, an egregiously wrong decision can be evidence of pretext or bad faith, *see Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), the visa context is unique. Here, the Court is affirmatively prohibited from peeking behind the curtain and inquiring into whether the Government's factual determinations were correct. *Sedaghatdoust*, 2024 WL 2383228, at *3. So this argument fails too.

Thus, because the Government has offered an unrebutted "facially legitimate and bona fide" reason for denying the visa, *Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment), the Khoshnevisans have been afforded all the process they are due.

## V.

Against all this, the Khoshnevisans offer a few arguments. First, they say, this case is *not* controlled by *Din*, because "the visa applicant in *Kerry v. Din* was a member of the Taliban regime," whereas "Mr. Khoshnevisan was a dentist." Opp'n at 3. But that argument strikes at the core of consular nonreviewability. It is, again, an argument that the Government was wrong

7

to apply the terrorism bar. And the Court cannot review the merits of the Government's visa decision. *Khachatryan*, 4 F.4th at 849. So this argument fails right out of the starting gate.

Second, the Khoshnevisans point to some State Department regulations, which they argue require that more explanation be provided. Opp'n at 4 (citing 22 C.F.R. § 42.81(e)). The idea here is that the regulations allow a visa applicant to administratively challenge the refusal of his application, but that it would be difficult (if not impossible) to do so without knowing why his application was refused. *Id*. This argument fails for two reasons.

*One*, this regulation predates the decision in *Din*. But the Supreme Court in *Din* did not consider it relevant to the Government's disclosure obligations. In fact, the only mention of § 42.81(e) in *Din* comes in the dissent. So the Supreme Court's rejection of any reliance on § 42.81(e) forecloses the argument that this Court can use it to end-run *Din*.

*Two*, the only appellate authority the Court is aware of that relies on § 42.81(e) to impose procedural obligations beyond those in *Din* is the Ninth Circuit's opinion in *Muñoz v. U.S. Department of State*, 50 F.4th 906 (2022). There, the Ninth Circuit relied on § 42.81(e) to impose a novel timeliness requirement on the Government's explanations for visa refusals. *Id*. at 922. But *Muñoz* is not the law of *this* circuit. And its analysis is subject to serious criticism. *Id*. at 924–927 (Lee, J., dissenting); *Muñoz v. U.S. Dep't of State*, 73 F.4th 769, 769–770 (9th Cir. 2023) (Bress, J., dissenting from the denial of rehearing en banc); *id*. at 770–784 (Bumatay, J., dissenting from the denial of rehearing en banc). Indeed, the Supreme Court has granted certiorari in *Muñoz*. 144 S. Ct. 679 (2024). The Court thus declines to follow the panel opinion.

But even in *Muñoz*, the Ninth Circuit agreed that citing the terrorism bar, without more, would be enough to comply with the Government's obligations under the Due Process Clause. *Muñoz*, 50 F.4th at 918. And how could it not? That was exactly what *Din* said. Both the Ninth

Circuit and this Court are bound by the Supreme Court's holding in *Din*. "The Supreme Court retains the exclusive prerogative of overruling its own decisions and until it does so, the lower courts are bound to follow them." *United States v. Six Hundred Thirty-Nine Thousand Five Hundred and Fifty-Eight Dollars ($639,558) in U.S. Currency*, 955 F.2d 712, 718 (D.C. Cir. 1992). So the Khoshnevisans' arguments seeking to avoid the clear dictate of *Din* fail.

Last, the Khoshnevisans appear to have forfeited many of their arguments in response to the Government's motion. They do not respond to the Government's argument that the visa denial does not impact an American citizen's constitutional rights. Nor do they respond to the Government's assertion that the terrorist activities bar is a facially legitimate and bona fide basis for refusing the visa. Although the Court has addressed the merits of the *Din* analysis, this forfeiture is an independently sufficient reason to grant the Government's motion.

## VI.

The Court recognizes that Plaintiffs may dearly wish to live together again. But the Government has denied Mr. Khoshnevisan's application to enter this country. And that is not a decision that the Court has the power to change. So the Court will grant the Government's Motion to Dismiss, ECF No. 17. A separate order will issue today.

Dated: June 14, 2024                                     TREVOR N. McFADDEN, U.S.D.J.